

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-5926
Re: The Board of Insurance
Commissioners has no legal
authority to enter the
order herein mentioned.

     Your letter of March 8, 1944, requesting the opinion of
this department concerning the legal authority of the Board of Insurance
Commissioners to make an order to the effect as mentioned in your
letter has been received. Said letter reads as follows:

     "Mutual Assessment Associations, other than
assessment-as-needed or post-mortem companies, opera-
ting under Article 5068-1, levy regular and periodic
assessments for payment by the members on the Leval
Premium Plan; that is, the amount of each member's
assessment is the same each time. The assessments
when collected are divided into two funds as provided
in Section 12 on the percentage set out in the As-
sociation's by-laws.

     "Occasionally the Mortuary Fund becomes depleted
through excessive claim payments and cannot be re-
stored by regular assessments alone. In such cases
a special or emergency assessment is levied against
the membership. The purpose and authority for such
special assessments are replenishment of the Mortuary
or Claim Fund.

     "Please advise me whether the Board of Insurance
Commissioners has authority to enter its Order to the
effect that thereafter the entire proceeds of such
special or emergency assessments shall be placed in
the Mortuary Fund, except an amount shown to the Board
to be necessary to defray the actual expense incident
to collection of the assessment, which may be placed in
the Expense Fund."

     Section 7 of Article 5068-1, Vernon's Annotated Civil Statutes,
requires each association to keep a complete and correct roster of its

members with proper statistical records for the purpose of determining the proper cost of the insurance, by ages or otherwise, and each association shall keep accurate records of groups, classes or clubs or other divisions of membership, if any; and shall keep records to show amounts paid in assessments by each member in each group; and as to groups, it must be shown how the funds are distributed between expense and mortuary or relief funds, and show the amounts paid out of the funds of the whole membership for each group in death claims or other benefits.

Section 11 of Article 5068-1, Vernon's Annotated Civil Statutes, provides:

"Each association shall levy a regular and periodical assessments by whatever name they may be called. These assessments must be in such amounts and at such proper intervals as will meet the reasonable operating expense of the association, and pay in full the claims arising under its certificates. When or if in the course of operation it shall be apparent that the claims cannot be met in full from current assessments and funds on hand, the amount must be increased until they are adequate to meet such claims, and the Board shall so order.

"When any association shall refuse to comply with the Board's recommendations or requirements respecting rates or assessments, it shall be treated as insolvent, and shall be dealt with as hereinafter provided.

"Each association operating under the provisions of this Act shall file its rate schedule with the Board of Insurance Commissioners."

Section 12 of Article 5068-1, provides, in effect, that assessments when collected shall be divided into at least two funds. One of these shall be the mortuary or relief fund, by whatever name it may be called in the different associations from which claims under certificates shall be paid, and to a limited extent the cost of defending contested claims, and nothing else; and the other fund shall be the expense fund from which expenses may be paid. This section of the statute further requires that at least sixty per cent of the assessments collected, except the membership fee, must be placed in the mortuary or relief fund. Each association shall provide in its by-laws for the portion of its assessments to be allotted to the mortuary relief fund and may provide for the payment out of said mortuary relief fund of attorneys' fees and necessary expenses arising out of the defense, settlement or payment of contested claims. Any such payments out of the mortuary relief fund for other than claims shall be subject to approval of the Board of Insurance Commissioners. In connection with the foregoing statement, it should be borne in mind that Article 5068-4 as enacted by the 48th Legislature, Regular Session, 1943, page

696, Chapter 386, authorizes any company or association operating under the provisions of S. B. 135, Acts of the Regular Session of the 46th Legislature, Chapter 6, page 401, to pay from the mortuary or relief funds, by whatever name it may be called, any taxes that may be assessed against or required to be paid by the company or association because of income to such funds.

Under the foregoing provisions of Article 5068-1, when or if in the course of operation, it is apparent that the claims of any association cannot be met in full from assessments and funds on hand, the amount must be increased until they are adequate to meet such claims and the Board of Insurance Commissioners shall so order that an increase be made in the assessments until they are adequate to meet such claims. If any association shall become unable to pay its valid claims within the time specified in the statute after due proofs are received, such association for the purposes of Article 5068-1, must be regarded as insolvent, and dealt with as is fully provided in said Act. The foregoing statute expressly sets forth the manner in which assessments when collected shall be divided and a compliance with this statute in respect to the divisions of such assessments is all that can be required of such associations.

Generally speaking, the Board of Insurance Commissioners, like other regulatory and administrative boards, possess only such power or authority as is expressly given or necessarily implied by the Constitution and statutes of this State. After a careful search of the statutes and various constitutional provisions of this State, we fail to find any expressed or implied authority empowering the Board of Insurance Commissioners to make and enforce an order such as the one inquired about. Therefore, it is our opinion that the Board of Insurance Commissioners has no legal authority to make and enforce an order of the nature of the order inquired about.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Ardell Williams
Ardell Williams
Assistant

AW:EP:wc

APPROVED MARCH 17, 1944
s/Geo. P. Blackburn
ATTORNEY GENERAL OF TEXAS